RECEIVED
IN LAKE CHARLES, LA

AUG 17 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

JAMES B. WARD, INDIVIDUALLY CIVIL ACTION NO. 03-2239
AND AS A PERSONAL
REPRESENTATIVE OF THE ESTATE
OF FRANK L. WARD

VERSUS JUDGE MINALDI

ISLE OF CAPRI CASINOS, INC., ET AL.

MEMORANDUM RULING

Presently before the court is a Motion for Summary Judgment [doc. 122] filed by Res-Care, Inc. The plaintiff filed an opposition to this motion.

Facts

James B. Ward is the surviving brother of Frank L. Ward, Jr.

Frank L. Ward died December 9, 2002, when he was crushed by a trash compactor containing an allegedly defective valve. At the time of his death, Frank Ward was employed by the Isle of Capri Casino and was living at a group home run by Res-Care.

Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the

burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[1] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

Procedural History

There were several defendants originally named in this suit. On May 7, 2004, BFI Waste Systems was dismissed with prejudice. May 28, 2004, St. Charles Gaming, Inc. (Isle of Capri

---

[1] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

Casino, Inc.) was dismissed. June 27, 2005, Prince Manufacturing Corporation was dismissed. The only defendant remaining is Res-Care.

Law and Analysis

As to Res-Care, ¶ 30 of the plaintiff's First Supplemental and Amending Complaint alleges:

> "Defendant, Res-Care (Normal Life of Lake Charles) has a non-delegable duty in the care of individuals by being in the position as caretaker, including plaintiff's decedent, to insure that safe and well-maintained equipment is used and does not involve a risk of physical harm, injury or death to those in their care, including plaintiff's decedent, unless the equipment is skillfully maintained and repaired."

The Third Amended Complaint alleges that:

11.

> "At all times pertinent, on and before December 9, 2002, defendant Res-Care, Inc. (Normal Life of Lake Charles), their aggregates, corporate, associates caretakers, and partners, and each of them provided, manned, controlled, supervised and oversaw the well being and care of the resident decedent, by and through their authorized agents, servants officers, employers, and/or designees pursuant to their statutory and regulatory duties under federal and state regulations."

12.

> "At all times pertinent, on and before December 9, 2002, all defendants, their aggregates, corporate, associates caretakers, and partners, and each of them, were the agents, servants, employees, successor interest, or joint venture of each other and were acting within the time, purpose, or scope of such agency, or employment; and all acts or omissions alleged herein of each defendant were authorized, adopted, approved, or ratified by each of the defendants."

The Fourth Supplemental and Amending Complaint states:

2:

> "Decedent, Frank L. Ward, Jr. was provided vocational support by Res-Care/Normal Life through employment at Isle of Capri Casino by responsible Staff of Res-Care to monitor his progress."

> "¶6: At all times pertinent, defendant Res-Care owed a duty to Frank L. Ward, Jr. to supervise and/or appropriately train decedent to operate trash compactor with the utmost of care and to the highest degree of safety pursuant to LSA-CC Articles 2315, 2315.1, 2315.2, 2316, 2317.1 and other federal and state regulations including LSA RS 23:1032 subds, A.B."

3

"¶7: At all times pertinent, defendant Res-Care breached the duty owed and engaged in conduct which was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious disregard for the rights and safety, which were the direct and proximate cause of death of Frank L. Ward, Jr. as alleged herein."

"¶8: As a member of the using public, plaintiff's decedent detrimentally relied upon defendant's representations, who having prior knowledge of decedent's mental retardation, failed to monitor and supervise plaintiff's decedent's work environment, duties and job performance. As such, defendants violated their duty by committing negligence and recklessness, knowingly and conscious disregard of rights and safety, such wrongful conduct including those acts of omission or commission previously described in complaints. These defendants' wrongful acts, including Res-Care, were the proximate cause or causes of the incidents made the basis of this suit, the injury to and death of decedent, and the injuries and damages sustained by the plaintiffs in their failure to warn of and take appropriate remedial action with respect to a known dangerous condition, machinery, or environmental job hazard while having requisite knowledge, information, and position of decision making status to change the course of events that caused the injury and death of plaintiff's decedent."

In cases where a mentally retarded resident of a facility such as Res-Care has been injured or killed, the courts have applied the standard of care applicable to hospitals. See *Shackleford v. State Through Department of Health and Human Resources*, 534 So.2d 38 (La.App. 3d Cir.1988), *writ denied*, 536 So.2d 1218 (La.1989); *Jones v. State Through Department of Health and Hospitals*, 95-1130 (La.App. 3d Cir.3/27/96), 671 So.2d 1074, *writ denied*, 96-1040 (La.5/31/96), 674 So.2d 263; *Daniels v. Conn*, 382 So.2d 945 (La.1980). A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care to a particular patient depends upon the circumstances and the facts of the case. *Jones v. State Through Department of Health and Hospitals, supra*; *Clark v. G.B. Cooley Service*, 813 So.2d 1273, 1278, 35-1279, 35,675 (La.App. 2 Cir.

4/5/02),), (La.App. 2 Cir., 2002). There are no cases that hold that a group home for the mentally handicapped has a legal duty to supervise and/or train a mentally handicapped individual to use the instrumentalities at his or her workplace.

Res-Care does not dispute that they had a duty to supervise Ward while he was in their group home. The plaintiff is attempting to extend this responsibility to claim that Res-Care had a duty to supervise Ward while working at the Isle of Capri. The plaintiff argues that Res-Care personnel monitored activities and daily life of the residents, including job placement, referred to as "vocational training."

Res-Care cites the case of *Hunter v. Evergreen Presbyterian Vocational School*, 338 So. 2d 164 (La. App. 2 Cir. 164) in support of its argument that Res-Care did not have a duty to supervise Ward while he was working at the Isle of Capri. In *Hunter*, a moderately to severely retarded young man drowned while working near a pond at his school. His parents brought a wrongful death action alleging that the school had a duty, which it breached, to supervise him continuously throughout the day. While the court agreed that the school had a duty to "use reasonable care to protect [the young man] from harm," this duty did not "dictate continuous supervision." *Id.* In reaching this conclusion, the court considered the young man's history and previous performance while at the school. He had attended this school for three and a half years prior to this accident without any indication that he was dangerous to himself. His one mishap during his tenure on the yard maintenance crew was cutting himself on the foot with a yard tool. The court noted that the young man had "many times" previously worked near and walked by the pool in which he drowned without incident. The court added that the school's policy to allow students "a certain amount of freedom consistent with their mental capacities was reasonable." *Id.* As such, while the drowning was " a

5

tragic and unfortunate event...it was not due to the fault of [the school] or its employees." *Id. at 166.* A psychological evaluation of Ward indicates that he had an IQ of 60, a score that falls in the domain of mild mental retardation.[2] He was even more capable than the decedent in *Hunter*. Ward was not on the residence grounds when the accident occurred. Therefore, Res-Care's responsibility to supervise would logically be less than that of the residential center in *Hunter*.

The plaintiff argues that by virtue of Res-Care's evaluating Ward's vocational work and his progress while at his job, they have assumed a duty. The plaintiff argues that the issue of duty owed to Ward revolves around the alleged failure to monitor, supervise and provide appropriate training to Ward in order to prevent the accident that occurred. Ward had been employed at the Isle for over seven years. He had executed the duties of his job with success. Testimony from co-worker Edward Henry establishes that Ward operated the trash compactor "regularly" and more often than the eight to ten times a day that Henry used it.[3] If the court in *Hunter* found that the residential care facility did not have a constant duty to supervise a man who died in an accident on their premises where he lived, Res-Care cannot have a duty to supervise a resident who is working off-site.

Res-Care has a duty to protect its residents from "external circumstances peculiarly within [its] control." *Id.* The proper functioning of the trash compactor at the Isle of Capri is not a circumstance within Res-Care's control. Ward died from multiple injuries after becoming pinned between the arms of a hydraulic trash compactor can lifter.[4] Edward Henry, a housekeeping

---

[2] Psychological Evaluation Update, pg. 2, attached to MSJ as Exhibit "A".

[3] Rule 30(b)(6) Deposition of St. Charles Gaming Company, pp 21, 26.

[4] "Investigation Regarding Ward, Frank" performed by St. Charles Gaming.

employee at the Isle of Capri, testified that he had used the compactor in which Ward was crushed the day before the incident and it was not working properly. He testified that the compactor had not been working properly for some time and that he had reported the problem to the Maintenance Department, but it had not been fixed as of the date of the accident.[5] Res-Care had no knowledge about the day to day functioning of the trash compactor at the Isle of Capri, nor did Res-Care have any control over that compactor. Res-Care cannot be held liable for a failure to protect Ward from a malfunctioning hydraulic trash compactor at the Isle.

The plaintiff has failed to establish a legal duty upon Res-Care to train Ward to use the trash compactor at the Isle. Attached to the Fourth Supplemental and Amending Complaint is a document styled a "Statement of Rights"[6], which was signed by Ward and representatives of Res-Care. Item Number 16 of the Statement of Rights says "Training for a job as stated in your ISP." Res-Care argues that this document is what it purports to be: a Statement of Rights. The Statement of Rights states that all individuals supported by Res-Care "have a right to" the thirty-one rights listed therein. The second page shows that Ward's signature is an acknowledgment of those rights as they had been explained to him.

Res-Care further argues that it is clear from reading the document that the rights enumerated were not items to be provided by Res-Care. In fact, it would be impossible for Res-Care to provide some of the items listed, e.g., a person for Ward to date, marry, and have children with or friends of his choice. The document does not state that Res-Care has a contractual obligation to provide the

---

[5]      Edward Henry deposition, pp. 16-18, 20.

[6]      Exhibit F to the MSJ.

listed items or activities for Ward, nor does the document mandate the observance of such rights by either party.

Without acknowledging that Res-Care had any duty to train Ward for his job at the Isle, Res-Care asserts that Ward did receive job training from the Isle and Res-Care. A housekeeping supervisor named Sharon Francois trained Ward to use the trash compactor. Aimee LeBlanc, a corporate representative of St. Charles Gaming, produced Ward's employment file from the Isle.[7] Included in that file was a document titled "Training Task List."[8] This document sets forth the housekeeping tasks and is initialed by both Ward and "S.F." next to most items on the list. LeBlanc testified that "S.F." is Sharon Francois. Initialing by both Ward and Francois next to "trash compactor" suggests that Ward received training from the Isle on October 31, 2000, with respect to the operation of the trash compactor.

Res-Care had also provided Ward with a "job coach" to help him learn his duties at the Isle. Mr. Klonia Jackson, the Manager of Ward's group home at the time of his death, testified via affidavit that a job coach from Res-Care had been sent to the Isle with Ward when he first began working there.[9] The job coach's role was to assist Ward in learning the various housekeeping tasks. Again, this job coach assisted at the beginning of his employment, but Ward had been working at the Isle seven years at the time of his accident.

Two Isle employees supervised Ward while he was at work: Ms. Pearl Guidry and Ms.

---

[7] Exhibit C to the MSJ.

[8] Exhibit G to the MSJ.

[9] Affidavit of Klonia Jackson, Exhibit H to the MSJ.

Sharon Francois. Guidry was the housekeeping manager and Francois was the housekeeping supervisor. It is clear from the evidence that Ward was not unsupervised while working at the Isle.

Res-Care has established that the plaintiff has failed to develop any evidence to suggest that Res-Care's alleged breach of duty to supervise and/or train Ward played a role in his death. Accordingly, summary judgment will be granted.

Lake Charles, Louisiana, this 17 day of August, 2005.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE